UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SAMANTHA ALFARO and GREGORY JOHN TORREZ,

                                    Plaintiffs,

        v.

D. LAS VEGAS, INC., et al.,

                                    Defendants.

D. LAS VEGAS, INC., et al.,

                                    Counter-Claimants,

        v.

GREGORY JOHN TORREZ,

                                    Counter-Defendant.

Case No. 2:15-cv-02190-MMD-PAL

**ORDER**

(Mot Strike – ECF No. 23)
(Mot Preclude – ECF No. 24)
(Mot. Preclude – ECF No. 26)
(Mot. Strike Report – ECF No. 27)

        This matter is before the court on Defendants D. Las Vegas Inc. and Edgar Vinicio Vallejo's Motion to Strike Torrez's Future Damages Calculation (ECF No. 23) and Motion to Preclude Plaintiffs from Offering Expert Testimony (ECF No. 24), and Counter-Defendant Gregory John Torrez's Motion to Preclude Samantha Alfaro from Offering Expert Testimony (ECF No. 26) and Motion to Strike Report of Dr. Enrico Fazzini (ECF No. 27).  These Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice.  On July 19, 2016, the court held a hearing on the Motions.  Present were counsel for Plaintiffs, Anthony Sharp and Kristopher Helmick; counsel for Defendants D. Las Vegas, Inc. and Edgar Vinicio Vallejo, Meredith Holmes; and counsel for Counter-Defendant Torrez, Colin Cavanaugh.  The court has considered the Motions, Plaintiffs' Responses (ECF Nos. 31, 32), the Replies (ECF Nos. 33, 34, 35), and the arguments of counsel at the hearing.

1

**BACKGROUND**

**I.      The Complaint and Procedural History**

The complaint in this case was filed in state court and removed on November 18, 2015. *See* Petition for Removal (ECF No. 1).   This is a personal injury action arising out of an automobile accident on December 18, 2014, on Las Vegas Boulevard.   Gregory Torrez was driving, and Samantha Alfaro was in the front passenger seat.   Torrez drove southbound on Las Vegas Boulevard entering the right turn lane to turn onto Harmon Avenue.   Torrez pulled alongside a D. Las Vegas "party bus" also traveling southbound on Las Vegas Boulevard.   The complaint alleges the driver of the party bus attempted to merge into the right turn lane and collided with the driver's side of Torrez's vehicle.   Alfaro and Torrez filed suit against the driver of the party bus, Edgar Vinicio Vallejo, and his employer, D. Las Vegas, Inc., asserting claims for negligence and negligent entrustment for personal injuries sustained in the collision. Defendants filed an answer and counterclaim against Torrez for indemnity and contribution, which made Torrez both a Plaintiff and Counter-Defendant in this action.

The parties submitted a proposed Discovery Plan and Scheduling Order (ECF No. 14) on January 25, 2016, which requested special scheduling review, and 235 days to complete discovery rather than the 180 days deemed presumptively reasonable under LR 26-1(e).   Special scheduling review was requested because the parties did not believe that all discovery could be accomplished within the time periods provided by LR 26-1(e) "due to the fact that a counterclaim was filed in this action and the answer to the counterclaim was not filed until January 6, 2016."   The court set the matter for hearing and questioned counsel about their request for special scheduling review.   *See* Mins. of Proceedings (ECF No. 17).   After hearing from counsel, the court indicated the proposed stipulated discovery plan and scheduling order would be approved, but that no further extensions would be considered absent a strong showing of good cause and due diligence.   *Id.*   The court entered the Discovery Plan and Scheduling Order (ECF No. 16), which established a July 10, 2016 discovery cutoff, and May 11, 2016, deadline for serving expert reports.

On April 29, 2016, the parties filed a Stipulation and Proposed Order (ECF No. 18) to extend the discovery deadlines by 90 days.  The stipulation indicated the additional time was needed to allow Defendants to obtain the Las Vegas Metropolitan Police Department ("LVMPD") file concerning this accident.  Defendants subpoenaed the LVMPD file on February 16, 2016, but were informed that because Torrez was arrested for DUI in connection with the accident, LVMPD would not respond to the subpoena until the ongoing criminal investigation was completed.  Torrez testified at his deposition that he had entered a guilty plea and needed to finish one more class to complete the requirements of his sentencing.  In addition, the stipulation indicated that Plaintiffs produced updated medical records from West Coast Orthopedic on March 16, 2016, indicating that Torrez was continuing treatment and wished to discuss surgery at his next visit.  At his deposition, Torrez also testified that his physician had recommended surgery.  Defendants stated they needed the additional time to retain an expert to perform an independent medical examination and opine on both causation and necessity of the surgery. Plaintiffs did not claim they needed additional time for expert disclosures.

The court set the stipulation for hearing on May 12, 2016.  Counsel for Plaintiffs did not appear.  *See* Mins. of Proceedings (ECF No. 21).  The court questioned counsel regarding their diligence in attempting to complete discovery within the extended time allowed under the discovery plan and scheduling order.  After the hearing, the court denied the parties' stipulation for a 90-day extension, but granted a 30-day extension of the fact discovery cutoff to obtain the LVMPD records and records from the medical authorizations that were served on disclosed providers.  *Id*.  However, the court indicated it would not approve an extension of the expert disclosure deadlines.  *Id*.  During the hearing, counsel for Defendants advised the court that they needed the additional 90 days because of Plaintiffs' inadequate discovery disclosures.  The court directed counsel to take whatever action they deemed appropriate to address Plaintiff's incomplete or lacking disclosures.  *Id*.

/ / /

/ / /

/ / /

3

## II.     The Parties' Positions

### A.  Defendants D. Las Vegas and Vallejo

Defendants D. Las Vegas and Vallejo's motions ask the court to exclude Torrez's future damage calculation and to preclude Plaintiff from offering any expert testimony on various grounds. First, although Torrez had timely disclosed past medical specials of $12,751.11, he served a sixth supplemental disclosure after the expert disclosure deadline disclosing future damages in the amount of $8,823,330 without providing any supporting documentation or expert report. Second, Defendants seek to preclude both Plaintiffs from offering expert testimony based on their failure to provide "the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703 or 705; and a summary of the facts and opinions to which the witness is expected to testify." Acknowledging that treating physicians may testify as both fact and expert witnesses, Defendants argue the Plaintiffs' disclosures do not comply with the requirements of Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.[1] With respect to Alfaro's retained expert, Dr. Fazzini, Defendants argue Alfaro did not comply with the report requirements of Rule 26(a)(2)(B). Additionally, Defendants maintain Dr. Fazzini is not qualified to render an opinion concerning the causation of Alfaro's self-reported increase in seizures based on the accident. Defendants argue Plaintiffs' non-compliance with their Rule 26(a) disclosure requirements is neither substantially justified nor harmless.

Alfaro's lack of compliance is not harmless, these Defendants argue, because they are prejudiced by the inadequate disclosures. Discovery has closed, the court has indicated it will not be reopened, and Plaintiffs' failure to comply with the expert disclosure requirements undermines the Defendants' right to meaningful cross-examination of these witnesses. Additionally, without the disclosures required by Rule 26(a)(2), Defendants could not make an informed decision about which, if any, of the witnesses to depose. Defendants therefore seek an order striking Torrez's future damages calculation, precluding Torrez from offering any evidence

---

[1]  Unless otherwise stated, all references to a "Rule" or "Rules" in this Order refer to the Federal Rules of Civil Procedure.

of future damages at the time of trial, and an order that both Plaintiffs be precluded from offering expert testimony at the time of trial from their treating physicians.

### B.  Counter-Defendant Torrez's Motion

Torrez seeks to exclude the testimony of Alfaro's non-retained treating physicians, and the testimony of her retained expert, Dr. Fazzini, under Rule 37(c)(1) on various grounds.  First, Torrez seeks to preclude Alfaro from offering expert testimony of treating physicians and other healthcare providers claiming they are hybrid retained experts for whom Rule 26(a)(2)(B) expert reports are required.  He also seeks to exclude testimony of Alfaro's treating physicians for failure to comply with Rule 26(a)(2)(C) asserting that Alfaro's disclosures consist of a boilerplate two-sentence description of the treating physicians' anticipated testimony without the required summary of facts and opinions.  Finally, Torrez seeks to exclude Dr. Fazzini from testifying as a retained expert on the ground his written report is unsigned and incomplete, and his only opinion consists of a single ambiguous sentence.  Additionally, Dr. Fazzini's report pre-dates months of subsequent treatment and contradictory evaluations by other providers.

### C.  Alfaro's Response

Alfaro opposes the motions asserting she appropriately disclosed her treating physicians to testify regarding their opinions formed during the course of treatment, and therefore written reports are not required.  She also claims that her disclosures of her treating physicians' opinions fully comply with Rule 26(a)(2)(C).  Finally, Alfaro acknowledges that Dr. Enrico Fazzini is a retained expert for whom a written report is required under Rule 26(a)(2)(B), but she argues that her disclosures regarding Dr. Fazzini meet all of the elements required by the rule.  Alfaro claims that her expert disclosure for Dr. Fazzini contains his opinions, the basis and reasons for them, the facts and data that were considered in forming them, his qualifications, a list of all publications authored in the previous 10 years, as well as a list of Dr. Fazzini's testimony for the previous 4 years and a statement of his compensation in this case.  In short, Alfaro argues that there is no basis under Rule 26 for precluding Dr. Fazzini or any of Alfaro's treating physicians from testifying in this case.

/ / /

**D.  Plaintiff Torrez's Response**

Torrez, in his capacity as a Plaintiff,  also argues that both Plaintiffs timely disclosed each of their treating physicians as expert witnesses and complied with all of the requirements of Rule 26(a)(2)(C).  He maintains there is no basis under Rule 26 for precluding any of Plaintiffs' treating physicians from offering testimony regarding each provider's evaluation of treatment of each Plaintiff, including opinions regarding reasonable medical necessity of treatment, causation, and reasonableness of charges. (As a Counter Defendant represented by another lawyer he takes the polar opposite position.) With respect to the motion to strike his future damages calculation, Torrez filed a notice of non-opposition acknowledging that the future damages calculation was not timely disclosed.  During oral argument, counsel for Torrez again acknowledged that the future damage calculation was not timely disclosed and agreed that the report and future damages calculation were inadmissible.  However, he reserved the right to argue the jury should award an amount of money for future damages for future pain and suffering without offering a quantifiable or monetary amount for future medical expenses.

**III.    Plaintiff's Treating Physician Disclosures**

On December 24, 2015, Alfaro and Torrez served an initial disclosure under Rule 26(a). The initial disclosure is attached as Exhibit A (ECF No. 26-1) to the motion.  In the initial disclosure, Alfaro and Torrez identified a total of 11 healthcare providers.[2]  The initial disclosure also identified "person(s) most knowledgeable and/or custodian of records and/or the treating physician or other healthcare provider" by name.  For each of these providers, the following identical disclosure was provided:

> The aforementioned medical care providers and/or their representatives are expected to testify as treating physicians and as experts regarding the injuries sustained; past, present and future medical treatment impairment; prognosis; disability; pain and suffering; disfigurement; causation; and the reasonableness and necessity of all care and billing as it relates to Plaintiff, as well as the authenticity of their medical records and cost of the services rendered.
>
> The aforementioned medical care providers will opine regarding future treatment, including, but not limited to, spinal cord simulators, chiropractic care, physical

---

[2]  Seven healthcare providers were the same for both Alfaro and Torrez; however, Alfaro treated with three additional providers and Torrez treated with one additional provider.  *See* Mot. Ex. A (ECF No. 26-1); Mot. Ex. D (ECF No. 26-4).

therapy, rehabilitative care, fusion surgery and/or therapeutic and/or diagnostic injections of the facets, nerve roots and/or medical branches.  Said doctors will also opine regarding other pain management procedures such as radiofrequency ablations, occipital blocks and any other foreseeable medical treatment.  Said doctors will also opine regarding all treatment in this case as it pertains to defending their opinions, to include any and all medical treatment as a result of the incident at issue, and any and all medical treatment prior to the incident at issue, and any and all depositions of other medical providers or defense experts, and any and all defense medical reports prepared to attack said doctor's opinions.

The disclosure "reserves the right" to call any and all treating physicians, psychiatrists, healthcare providers to testify concerning "any and all aspects of the case, including the issues of standard of care, causation and damages."  In addition, the initial disclosure indicated that the custodian of records for all treating physicians and medical providers were expected to testify "as to the medical treatment and resulting bills provided to the Plaintiff."  The "persons most knowledgeable" for all of the medical facilities and treating physicians were "expected to testify as expert witnesses about the injuries sustained by Plaintiff in the past, present and future medical treatment, bills, injuries, past and future pain, suffering, disfigurement and disability as a result of this incident."

Plaintiffs served a supplemental Rule 26(a) initial disclosure on February 8, 2016.  *See* Mot. Ex. D (ECF No. 26-4).  The supplemental disclosure listed the same 11 healthcare providers as well as "persons most knowledgeable" and custodians of records for each of the providers.  For each of these providers the following identical supplemental disclosure was provided:

The persons most knowledgeable at [this provider] are expected to offer expert testimony at the time of trial regarding this medical provider's evaluation and treatment of Plaintiff; and to offer expert testimony that the treatment rendered to Plaintiff and/or future treatment recommended to Plaintiff by this medical provider (such treatment including, but not limited to, evaluation, testing, diagnosis, procedures, exercise and/or therapy regiments, follow up and/or prescription medication) was and is reasonably medically necessary; and to offer expert testimony that the reasonable medical necessity of such treatment was caused by the incident(s) described in Plaintiff's Complaint; and to offer expert testimony that the costs for such past and future treatment rendered and/or recommended by this provider are reasonable and customary for this geographical area in which such treatment was rendered and/or such recommendations were made.

The supplemental initial disclosure also indicated that each of the medical care providers and/or their unidentified representatives were "expected to testify as treating physicians and as

experts regarding the injuries sustained; past, present and future medical treatment and impairment; prognosis; disability; pain and suffering; disfigurement; causation; and the reasonableness and necessity of all care and billing as it relates to Plaintiff, as well as the authenticity of their medical records and the cost of their services rendered." The supplemental disclosure repeated the language about the subject matter on which the medical care providers would opine contained in the initial disclosures served December 24, 2015. The supplemental disclosure also included a computation of special damages for Alfaro indicating that total medical expenses incurred to date were $32,313.41 from her 10 providers listed in the initial and supplemental disclosures. The total medical expenses incurred to date for Torrez from his eight providers listed was $11,091.11.

### IV.    Alfaro's Retained Expert Disclosure

On April 1, 2016, Plaintiffs served a designation of initial expert witnesses and documents pursuant to Rule 26(a)(2) and LR 26-1(e)(3). *See* Mot. Ex. E (ECF No. 26-5). In it, Plaintiffs identified Enrico Fazzini D.O. as a licensed and board certified neurologist expected to testify concerning Alfaro's injuries, the reasonableness and necessity of all medical treatment, the necessity of costs of any past or future medical treatment, and any permanent medical impairment of Alfaro. The expert designation also indicated that Dr. Fazzini was expected to testify regarding the medical record review he prepared regarding Alfaro's treatment. His fee schedule, curriculum vitae, and list of expert witness testimony were attached to the expert designation as Exhibit 1. *Id*. at 7. What Alfaro claims is a "medical record review" was attached as Exhibit 2. *Id*. at 19.

The medical record review is dated March 27, 2015, and consists of a two-page report outlining Dr. Fazzini's examination of Alfaro the same date. The report indicates that Alfaro was referred to him on March 27, 2015, for a neurological consultation following a motor vehicle injury that occurred on December 18, 2014. It relates information that Alfaro reported to Dr. Fazzini and describes the neurological examination he conducted as well as his impressions and recommendations. The report concludes "[t]his patient remains moderately disabled as a direct consequence of the injuries sustained in the motor vehicle accident of 12/18/14."

1   <u>**DISCUSSION**</u>

2   **I.   Legal Standards**

3       These motions involve the recurring issue of when a treating physician is transformed

4   into an expert offering testimony on matters beyond the treatment rendered for purposes of the

5   expert disclosure requirements of Rule 26(a)(2)(B).  It also involves the scope of opinions a

6   treating physician may offer in the absence of a Rule 26(a)(2)(B) compliant report.  Finally, the

7   motion involves the adequacy of treating physician expert disclosures under Rule 26(a)(2)(B)

8   and (C).

9       **A.  Expert Report Requirements**

10       Rule 26(a)(2) requires parties to "disclose to the other parties the identity of any witness

11   it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  The

12   Advisory Committee Notes to the 1993 amendments to Rule 26 indicate that the disclosure

13   requirements for expert testimony were intended to allow opposing parties to have a reasonable

14   opportunity to prepare for effective cross-examination and arrange for expert testimony from

15   other witnesses.  *See* Fed. R. Civ. P. 26 Advisory Comm. Notes (1993).  Amendments in 2010

16   made significant changes to Rule 26(a)(2) and (b)(4) to address concerns about expert discovery.

17       The Federal Rules of Civil Procedure establish two different classes of experts: (1) those

18   who are retained or specially employed to give expert opinion testimony in a case, and (2) those

19   who are not retained or specially employed but nevertheless may provide expert testimony under

20   Federal Rules of Evidence 702, 703, or 705.  Specially retained experts are required to comply

21   with the Rule 26(a)(2)(B) report requirements.  Witnesses who qualify to provide expert

22   testimony based on their "knowledge, skill, experience, training or education" under Federal

23   Rules of Evidence 702, 703, or 705 are required to comply with the expert disclosure

24   requirements of Rule 26(a)(2)(C).

25       **1.   Retained Expert Report Requirements**

26       Rule 26(a)(2)(B) requires written expert reports from witnesses "retained or specially

27   employed to provide expert testimony in the case."  For each disclosed expert, Rule 26(a)(2)(B)

28   requires that an expert witness disclosure be accompanied by a written report prepared and

signed by the witness containing: (1) a complete statement of all opinions and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the qualifications of the witness, including a list of all publications authored by the witness in the previous 10 years; (5) a list of all other cases in which the witness testified as an expert at trial or by deposition within the preceding 4 years; and (6) the compensation to be paid for the study and testimony.  Fed. R. Civ. P. 26(a)(2)(B).  An expert's report must be "detailed and complete."  *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 300 (D. Nev. 1998) (quoting *Sierra Club v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)).  Expert reports are required in order to eliminate "unfair surprise to the opposing party and [to conserve] resources."  *Id.* at 299 (quoting *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)).

### 2.  Non-Retained Expert Report Requirements

Parties relying on expert opinions of non-retained experts must make the disclosures required by Rule 26(a)(2)(C), which are considerably less extensive than the disclosure requirements of Rule 26(a)(2)(B).  Although a treating physician is often called as an expert witness at trial, he or she is generally not retained or specially employed for this purpose, but rather to treat a plaintiff for his or her medical complaints.  In 2010, Rule 26 was amended to create Rule 26(a)(2)(C) and resolve the tension that sometimes prompted courts to require reports under 26(a)(2)(B) from witnesses exempted from the expert report requirement.  The Advisory Committee Notes regarding this amendment state, in relevant part:

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions.  This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B).  Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
>
> …
>
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.  Parties must identify such witnesses under Rule 26(a)(2)(A) and

10

> provide the disclosure required under Rule 26(a)(2)(C) .  The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

*See* Fed. R. Civ. P. 26 Advisory Comm. Notes (2010).  The amended rule strikes a balance between requiring an expert report from a witness, like a treating physician, who was not specially retained to provide expert testimony and requiring an opposing party to search through hundreds of pages of medical records in an attempt to guess at what expert testimony a treating physician might provide.

### B.  Treating Physicians' Testimony

The Federal Rules of Civil Procedure and Federal Rules of Evidence regarding treating physician testimony have evolved over the years.  The 1993 Advisory Committee Notes addressing Rule 26(a) observed that treating physicians are fact witnesses to the extent they provide testimony arising out of their roles as actors in events giving rise to the litigation.  Under the 1993 amendments, to the extent treating physicians were fact witnesses, they were not regarded as experts for whom expert reports were required under Rule 26(a)(2)(B).  However, a treating physician who did not supply an expert report was not permitted to go beyond information learned or acquired, or opinions reached as a result of the treating relationship.

In *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), the Ninth Circuit addressed, for the first time, when, if ever, a treating physician is required to prepare an expert report compliant with Rule 26(a)(2)(B).  In *Goodman*, the plaintiff tripped and fell in an Arizona office supply store and filed a complaint in state court alleging the store negligently allowed an unreasonably dangerous condition to exist which resulted in her fall and serious injuries.  The case was removed to federal court based on complete diversity between the parties.  Under Arizona law, causation is an essential element of a negligence claim.  The district judge prohibited Goodman's medical experts from testifying about causation in her case-in-chief because she did not comply with her Rule 26(a)(2)(B) report disclosure obligations.  On appeal, the Ninth Circuit held that "when a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2)."  *Id.* at 819–20.  However, because the law

regarding "hybrid experts" was not settled, and because treating physicians are usually exempt from the requirement of providing written reports, the Ninth Circuit exercised its discretion to apply this clarification prospectively. *Id.*

The *Goodman* court recognized the general rule that a treating physician is a percipient witness of the treatment rendered, rather than an expert retained or specially employed to provide expert testimony. For this reason, a treating physician is ordinarily not subject to the written report requirements of Rule 26(a)(2)(B). *Id.* at 824 (citing Fed. R. Civ. P. 26 Advisory Comm. Notes (1993)). However, the Ninth Circuit noted that district courts in the circuit have limited treating physician testimony to opinions formed during the course of treatment when the party seeking admission of the testimony disclosed no expert report. *Id.* at 825.

Joining other circuits that had addressed the issue, the Ninth Circuit held that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826. The *Goodman* court found that the plaintiff had retained a number of her treating physicians to render expert testimony beyond the scope of the treatment rendered, and to form their opinions, those doctors reviewed information provided by the plaintiff's attorney, which the doctors had not reviewed during the course of their treatment. For these reasons, the Ninth Circuit agreed with the district court that these doctors fell outside the scope of the "treating physician" exception, and under Rule 26(a)(2)(B), written reports were required.

## C.  Scope of Treating Physician Opinion Testimony

Disputes often arise about what expert opinions a treating physician may offer without providing a Rule 26(a)(2)(B) compliant report. The majority of these disputes involve whether a treating physician may offer expert opinions on causation, disability, the need for future surgery and treatment, and the cost of future care, treatment, and surgery. Before the 2010 amendments to Rule 26(a)(2), the majority of courts in the country concluded that 26(a)(2)(B) reports were not required for treating physicians expressing opinions as to causation, diagnosis, prognosis, and the extent of disability as long as those opinions were based on the patient's treatment. *See, e.g.*, *Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998) (collecting cases) ("The

majority of other courts in the country have concluded that Rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis, and extent of disability where they are based on the treatment."); *Salas v United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) ("The relevant question is whether these treating physicians acquire their opinions as to the cause of the plaintiff's injuries directly through the treatment of the plaintiff.").

Two decisions in this district published years before the 2010 amendment held that treating physicians are exempt from the Rule 26(a)(2)(B) report requirements even when offering opinions on causation, diagnosis, prognosis, and the extent of disability.   In *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173 (D. Nev. 1997), Magistrate Judge McQuaid rejected arguments that a treating physician was limited to "factual percipient observations" and was required to provide a Rule 26(a)(2)(B) report to give opinions on such matters as causation, future treatment, the extent of disability, "and the like." *Id.* at 174–75.  The court found those positions too narrow and Rule 26(a)(2)(B) was not that restrictive by reasoning:

> It is common place for a treating physician during, and as a part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis, the prognosis, and the extent of disability caused by the condition, if any.  Opinions such as these are a part of the ordinary care of the patient and do not subject the treating physician to the extensive reporting requirements of Fed. R. Civ. P. 26(a)(2)(B).

*Id.* at 175.  The *Harnischfeger* decision cited a number of other federal district court decisions that had reached a similar conclusion.  *Id.*

In *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296 (D. Nev. 1998), Magistrate Judge Johnston followed *Harnischfeger* holding that the expert report requirements of Rule 26(a)(2)(B) only apply to experts who are retained or specially employed to provide expert testimony.  *Id.* at 297.  The plaintiff in *Elgas* designated a doctor who had not personally treated the plaintiff but was the directing physician at the medical clinic plaintiff visited.  The doctor was consulted by a nurse practitioner who did treat the plaintiff and the doctor directed the nurse practitioner's work.  The court held that the doctor had knowledge of the plaintiff's medical condition through consultation, and therefore qualified as a treating physician who was not subject to the Rule

26(a)(2)(B) requirements.  However, the court held that the doctor "should not be allowed to render a medical opinion based on factors that were not learned in the course of his limited treatment of the Plaintiff at his clinic." *Id.* at 300.

The *Elgas* court agreed with *Harnischfeger* that a treating physician's opinion on matters such as causation, future treatment, the extent of disability, and the like "are part of the ordinary care of the patient" and, therefore, a treating physician may testify regarding these matters without being subject to the extensive reporting requirements of Rule 26(a)(2)(B). *Id.* However, *Elgas* also found that a party could not avoid the Rule 26(a)(2)(B) requirements "by simply indicating that her expert is a treating physician." *Id.* at 299.  Quoting *Hall v Sykes*, 164 F.R.D. 46, 48–49 (E.D. Va. 1995), the court found that a Rule 26(a)(2)(B) report would be required from a treating physician "retained or employed to render a medical opinion based on factors that were not learned during the course of the treatment of the patient." *Id.* at 298.

*Goodman*, *Harnischfeger*, and *Elgas* were decided before the 2010 amendments to Rule 26(a)(2), which now require 26(a)(2)(C) reports for experts, like treating medical providers, who provide expert testimony under Federal Rules of Evidence 702, 703, or 705.  In *Goodman* the Ninth Circuit relied on the Sixth Circuit's decision in *Fielden v. CSX Transportation, Inc.*, 482 F.3d 866 (6th Cir. 2007).  There, the Sixth Circuit held that "a report is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the Plaintiff's records up to and including that treatment." *Id.* at 871.  The Ninth Circuit concluded that *Fielden* "does not stand for the proposition that a treating physician *never* has to disclose an expert report."  644 F.3d at 825 (emphasis in original).  In *Fielden*, the court found that evidence in the record showed the physician had formed his causation opinion during the course of treatment, and there was no evidence the doctor formed his causation opinion at the request of counsel.  482 F.3d at 871–72.  The *Fielden* decision distinguished medical provider testimony regarding causation that pertains to the patient's treatment from causation testimony prepared in anticipation of litigation.

The Ninth Circuit also relied on the Seventh Circuit's decision in *Meyers v. Nat'l R.R. Passenger Co.*, 619 F.3d 729, 734–35 (7th Cir. 2010), which held that an expert report is

1   required when a treating physician is offered to provide testimony concerning the cause of the

2   plaintiff's injury, but did not make that determination in the course of providing treatment.

3   *Goodman* noted that the Eighth Circuit "goes further, requiring disclosure of a written report

4   anytime a party seeks to have a treating physician testify as to *causation* of a medical condition,

5   as opposed to merely the existence of the condition."  644 F.3d at 825 (citing *Brooks v. Union*

6   *Pacific R.R. Co.*, 620 F.3d 896, 900 (8th Cir. 2010)) (emphasis in original).  *Goodman* also cited

7   district court decisions within the circuit that "have limited treating physician testimony to

8   opinions formed during the course of treatment when the party seeking admission of the

9   testimony disclosed no expert report."  *Id.*

10          Since *Goodman* was decided, motions to exclude or strike treating physician or treating

11   provider opinions for failure to comply with Rule 26(a)(2) have proliferated.  Arguments are

12   repeatedly advanced that a Rule 26(a)(2)(B) report is required any time a treating provider offers

13   expert opinion testimony. Here, Torrez's motion argues that all of Plaintiffs' treating physicians'

14   "medical legal" opinions should be excluded because Plaintiffs did not provide Rule 26(a)(2)(B)

15   compliant reports.  Specifically, Torrez argues the court should exclude all treating physician

16   testimony regarding "opinions on the reasonableness and necessity of all care and billing, past

17   and future damages, and the opinions of other providers and defense experts."  However,

18   *Goodman* did not hold that a Rule 26(a)(2)(B) report is required any time a treating physician

19   offers expert opinions.  Rather, *Goodman* found that the plaintiff had retained a number of her

20   treating physicians to render opinions outside the scope of her treatment, and they had

21   considered medical records and information provided by her attorneys that they had not reviewed

22   during the course of treatment.  A footnote in the decision describes the extensive materials

23   provided by plaintiff's counsel and the request by counsel to opine on injuries caused by the

24   plaintiff's fall "NOT ONLY based on your own observations but also based on your

25   understanding of the patient's *medical records as well*."  *Id*. at 826 n.2 (emphasis in original).

26          The court concludes that *Goodman* did not adopt the Eighth Circuit's approach of

27   requiring a Rule 26(a)(2)(B) report any time an expert offers expert opinions.  Rather, the Ninth

28   Circuit joined the Sixth and Seventh Circuits that have held expert reports are required when a

treating provider is used to render opinions that are not reached during the course of treatment. *Goodman* cited, but did not criticize, a number of district court decisions in this circuit that have "limited treating physician testimony to opinions formed during the course of treatment when the party seeking admission of the testimony disclosed no expert report." *Id*. at 825.   After citing these cases, *Goodman* announced its holding that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id*. at 826.  The court in *Lutrell v. Novartis Pharmaceuticals Corp.*, 894 F. Supp. 2d 1324 (E.D. Wash. 2012), reached the same conclusion.  Applying *Goodman*, it found "a treating physician may be allowed to opine even as to causation if the opinion was formed during the course of providing treatment, regardless of submission of an expert report." *Id.* at 1333.  However, *Lutrell* noted that in *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011), a criminal case, the Ninth Circuit stated that a treating physician's opinion on issues of causation is expert testimony.

*Urena* is clearly distinguishable and its holding limited. The decision was not based on and did not cite, the Federal Rules of Civil Procedure.  Urena was convicted of assault with a dangerous weapon and possession of contraband in prison arising out of an altercation with another inmate who received superficial lacerations that required stitches.  A "shank" was found underneath Urena's shoulder.  Urena confessed that the shank was his and that he held it during the fight.  At trial the government called the injured inmate's treating physician who testified about the nature and extent of the inmate's injuries.  The doctor's report stated that an injury to the inmate's right eye was likely caused by a punch or a fall to the ground, not a knife.  The government moved to preclude Urena from asking the doctor about causation and the court agreed as long as the government did not open the door to that line of questioning on direct. Urena then sought to designate the doctor as his own medical expert, which the trial court denied.  On appeal, Urena argued the district judge abused his discretion by refusing to instruct the jury on his theory that he acted in self-defense, and that his Confrontation Clause rights were violated by refusing to allow him to cross-examine the treating physician about the cause of the

other inmate's injuries.  He also claimed the trial court abused its discretion by refusing to allow him to designate the doctor as an expert during trial.

The Ninth Circuit found the trial court did not abuse his discretion in denying Urena's belated attempt to designate the doctor as his medical expert during trial, stating the trial court had "ample discretion to prevent a party from designating a new expert after the trial has started."  *Id*.  The Ninth Circuit also found no abuse of discretion in the exclusion of evidence that Urena should have disclosed before trial in reciprocal discovery required by the Federal Rules of Criminal Procedure.  *Id.* at 909 ("It follows from these principles that a district court may normally refuse to permit expert testimony from an expert not previously designated before trial in the pretrial conference.").  The actual case holding stated that the district court did not abuse its discretion in declining to permit Urena to add the doctor as a defense witness during trial.  *Id*. ("We hold that the district court did not abuse its discretion in declining to permit Urena to add Dr. David as a defense witness on the causation issue during trial.").

The *Urena* court noted that "other courts have held that a physician's assessment of the cause of an injury is expert testimony."  *Id.* at 908 (citing decisions in the Second and Eleventh Circuit).  The Ninth Circuit simply agreed with these two circuits that the doctor's "opinions on issues of causation required expert testimony."  *Id*.  The Ninth Circuit made this statement responding to the defendant's argument that he was not required to designate the doctor as an expert before trial "because a doctor's evaluation of an injury is intertwined of his judgment of what caused the injury."  *Id*.  The *Urena* court did not cite *Goodman* and cited two cases that were not addressed in *Goodman*.  It did not address the expert designation and reporting requirements for a treating physician providing an expert opinion on the causation of a patient's injury.  It also did not explicitly address experts who provide opinions under Federal Rule of Evidence 702.  *Urena* merely held that the trial court did not abuse its discretion in denying the defendant's request to designate the doctor as a defense expert witness during trial.

In short, the *Urena* decision simply does not apply to the requirements of Rule 26(a)(2).  A treating physician's causation opinion is an expert opinion under Federal Rule of Evidence 702 because it requires training, education, and specialized knowledge.  *Goodman* holds that if

that opinion was reached during the course of treating the patient, a Rule 26(a)(2)(B) report is not required.  After the 2010 amendments, a non-retained expert, like a treating physician, must comply with the Rule 26(a)(2)(C) disclosure requirements, which are considerably less onerous than the Rule 26(a)(2)(B) report requirements.

More recently, in *DeRosa v. Blood Systems, Inc.*, 298 F.R.D. 661 (D. Nev. 2014), District Judge Mahan assumed, without deciding, that treating physicians testifying in an expert capacity were exempt from the report-disclosure requirements of Rule 26.  However, he excluded opinions offered in a treating physician's affidavit used to support plaintiff's opposition to a motion for summary judgment on various grounds.

In *DeRosa*, the plaintiff brought a medical malpractice action against Blood Systems, Inc. ("BSI") for personal injuries she alleged were sustained during a phlebotomy procedure.  Plaintiff's treating physician, Dr. Enrico Fazzini, concluded the plaintiff's symptoms were irreversible and that she was permanently disabled from full use of her left arm.  The plaintiff did not disclose Dr. Fazzini as a witness in any capacity during discovery.  BSI filed a motion for summary judgment asserting plaintiff failed to present any evidence regarding the standard of care for phlebotomy procedures.  Under Nevada law, a medical malpractice claim brought requires a plaintiff to establish that defendant's conduct departed from the accepted standard of medical care.

Plaintiff filed Dr. Fazzini's affidavit in response to the motion for summary judgment in order to establish the standard of care for phlebotomy.  Dr. Fazzini's affidavit stated "[i]n my professional medical opinion, the phlebotomist's care and treatment fell below the reasonable standard of care for such treatment in the medical industry." *Id.* at 664.  The affidavit did not convey any details concerning what types of precautions, techniques, or other actions constitute the reasonable standard of care for phlebotomy procedures and did not specify any particular actions by the BSI technician that violated the standard.  Additionally, the plaintiff presented no evidence of Dr. Fazzini's experience, if any, in the field of phlebotomy that would qualify him as an expert on the standard of care.  The court agreed that a treating physician could testify to the standard of care in medical malpractice cases, but "only if the physician would qualify as an

expert in the field in which in which he is testifying." *Id* (citing *Prabhu v. Levine*, 111 Nev. 1538, 930 P.2d 103, 109 (1996)).  Because the plaintiff did not indicate that Dr. Fazzini would be called as a witness prior to her response to the motion for summary judgment, the court declined to presume Dr. Fazzini was qualified and pointed out that both the court and the defendant "are left only to guess at what the content of his testimony might be." *Id.*

The court next addressed the plaintiff's arguments based on *Harnischfeger* that treating physicians testifying in an expert capacity are exempt from the report disclosure requirements of Rule 26.  *Id*. at 664–65.  The court assumed, *arguendo*, that this assertion is true, but pointed out that Rule 26(a)(2)(C) still requires a disclosure, stating "the subject matter on which the witness is expected to present evidence . . . and a summary of the facts and opinions to which the witness is expected to testify."  *Id.* at 664.  The court found the case before it "a prime example of why such disclosures are necessary."  *Id.*  Applying Rule 37(c), the court found that the plaintiff could not rely on Dr. Fazzini's affidavit to oppose the motion and granted summary judgment in BSI's favor.  *Id.* ("The court will not allow plaintiff to game the court by waiting until the eleventh hour to designate an expert to testify to an essential element of her claim, preventing BSI from deposing him or otherwise learning the basis for and substance of his opinions.").

To summarize, before the 2010 amendments to Rule 26(a)(2), the majority of courts held that treating physicians providing opinions on causation, diagnosis, prognosis, and the extent of disability were not required to provide Rule 26(a)(2)(B) reports if their opinions were formed during the course of treating their patients.  However, if a treating physician's opinions were based on information provided by an attorney or others that were not reviewed during the course of treatment, a Rule 26(a)(2)(B) report was required "insofar as their additional opinions are concerned."  *Goodman*, 644 F.3d at 826.  The 2010 amendments to Rule 26(a)(2) now mandate that non-retained experts, like treating medical providers, who offer opinions based on their "knowledge, skill, experience, training or education" under Federal Evidence Rules 702, 703, or 705, make the disclosures required by Rule 26(a)(2)(C).  Rule 26(a)(2)(C) requires disclosure of "(i) the subject matter on which the written witness is expected to present evidence under Federal Evidence Rule 702, 703 or 705; and (ii) a summary of facts and opinions to which the witness is

expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)(i), (ii).  The disclosure obligation stated in 26(a)(2)(C) "does not apply to facts unrelated to the expert opinions the witness will present."  Fed. R. Civ. P. 26 Advisory Comm. Notes (2010).  A treating physician is still a percipient witness of the treatment rendered and may testify as a fact witness and also provide expert testimony under Federal Evidence Rules 702, 703, and 705.  However, with respect to expert opinions offered, a Rule 26(a)(2)(C) disclosure is now required.

### D.  Sanctions Under Rule 37(c)(1)

Rule 37 authorizes sanctions for a party's failure to make disclosures or cooperate in discovery:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  Rule 37(a)(4) explicitly provides that an evasive or incomplete disclosure, answer, or response to a discovery obligation "is to be treated as a failure to disclose, answer, or respond."  Thus, Rule 37 gives "teeth" to Rule 26's mandatory disclosure requirements by forbidding the use at trial of any information that is not properly disclosed. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).  Rule 37(c)(1) is a "self-executing, automatic" sanction designed to provide a strong inducement for disclosure. *Goodman*, 644 F.3d at 827.

The burden is on the party facing discovery sanctions under Rule 37(c)(1) to prove that its failure to disclose was substantially justified or harmless.  *R&R Sails, Inc., v Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (applying Rule 37(c)(1) to a failure to disclose an expert report as required by Rule 26(a)(2)(B)).  Exclusion of an expert's testimony for failure to comply with the requirements of Rule 26(a) is a sanction available to the district court even in the absence of a showing of bad faith or willfulness.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Under Rule 37(c)(1), preclusion of evidence is neither mandatory, nor the only sanction the court may consider.  Rule 37(c)(1) explicitly provides that in addition

to or instead of preclusion, the court may order the following sanctions: (1) the payment of reasonable expenses including attorney's fees caused by the failure; (2) an instruction informing the jury of the party's non-compliance; and (3) any "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A)–(C).

The Ninth Circuit has recognized that although "in the ordinary case, violations of Rule 26 may warrant evidence preclusion," it is a harsh sanction. *R&R Sails*, 673 F.3d at 1247. Preclusion of evidence is a "particularly harsh" sanction when it would effectively result in dismissal of a party's claim. *Id.* When a preclusion sanction would amount to a dismissal of a party's claim the Ninth Circuit requires the district court to determine (1) whether the claimed noncompliance involved willfulness, fault, or bad faith; and (2) the availability of lesser sanctions. *Id.* These two requirements are part of the court's harmlessness analysis. *Id.*

## II. Analysis and Decision

This case raises the recurring issue of the permissible scope of the testimony of a treating physician who fails to provide an expert report under Rule 26(a)(2)(B), the scope of the opinions treating providers may provide in the absence of a Rule 26(a)(2)(B) expert report, and the adequacy of Plaintiffs' Rule 26(a)(2)(B) and (C) disclosures.

Here, both Plaintiffs disclosed 11 medical treating providers by name as well as a "person most knowledgeable" and a custodian of records as witnesses who would provide treating physician and expert testimony. To the extent any of the providers are relied upon to testify about information not acquired or relied upon in treating Plaintiffs, a Rule 26(a)(2)(B) report was required for those opinions. At a minimum, Plaintiffs were required to comply with the disclosure requirements of Rule 26(a)(2)(C). Plaintiffs claim their initial and supplemental disclosures comply with their Rule 26(a)(2)(C) obligations. The court disagrees.

### A.  Plaintiffs Disclosures Do Not Satisfy Rule 26(a)(2)(C)

The court finds that both Plaintiffs' initial disclosure and supplemental disclosure for their treating physicians fail to meet the requirements of Rule 26(a)(2)(C). They do not disclose any expert opinions at all. Although the identical disclosures arguably include broad subject matter areas on which each witness is expected to testify or present evidence, they do not include

21

a "summary of the facts and opinions to which the witness is expected to testify."  *See* Fed. R. Civ. P. 26(a)(2)(C)(ii).  The initial disclosure and supplemental disclosures do not even identify the conditions for which Plaintiffs were treated, their diagnosis or prognosis, or the course of treatment provided.  No information at all is provided linking any injury claimed by either Plaintiff to the accident in this case.  The identical descriptions of expected testimony that Plaintiffs provided for all 11 treating physicians and providers are so generic, unhelpful, and boilerplate they could apply to any virtually any case.

In addition, the disclosures and supplemental disclosures of the treating physicians designate unidentified "persons most knowledgeable" and custodians of records for each of the named providers.  During oral argument, counsel for Alfaro clarified that the disclosures provided for custodians of records was only a precaution in case they were needed to authenticate the medical records and bills for each provider.  With respect to the "persons most knowledgeable," counsel for Alfaro argued that frequently, treating physicians are not knowledgeable about billing practices and records, or able to testify about the reasonableness of the charges.  For this reason, the disclosures identified "persons most knowledgeable" for each provider expecting that the provider might produce an office manager or other administrative staff member to testify at deposition or trial instead of the provider.  Plaintiffs' initial and supplemental disclosures provided detailed information about past medical specials each Plaintiff incurred for each of the 11 providers.  They did not provide the summary of opinions or factual bases for any opinions that the past medical specials were incurred for any medical condition(s) caused by the accident.  They also did not state any facts on which they based the conclusory opinion that the treatment and bills were reasonable and necessary.  The court and opposing counsel are left to guess what testimony each of the providers may offer.

A custodian of records may certainly authenticate medical records.  The court is hard pressed to find any prejudice to opposing counsel because a name was not provided for each custodian of records for each provider.  In the court's experience, a custodian of records' testimony is rarely needed, especially where opposing counsel have been provided with HIPAA compliant releases enabling them to obtain medical records directly from the providers.  The

same is not true with Plaintiffs' designation of a "person most knowledgeable" from each of the medical providers.  Counsel for Plaintiffs do not explain how an unidentified "person most knowledgeable" office manager or administrator from each of the medical providers would be able to offer admissible opinions about reasonableness and necessity of past medical specials. This is especially true where, as here, counsel stated in oral argument the treating physicians themselves are often unable to opine on the reasonableness and customary charges for medical services provided.

Rule 26(a)(2)(B) and Rule 26(a)(2)(C) share the same common purpose: to prevent unfair surprise and to conserve resources.  An opposing party is entitled to an expert disclosure from a non-retained expert, including treating providers, that specifies what opinions will be offered, and the factual bases for those opinions. Rule 26(a)(2)(C) mandates "summary disclosures of the opinions to be offered by the expert witness who are not required to provide reports under Rule 26(a)(2)(B) and of facts supporting those opinions."  Fed. R. Civ. P. 26 Advisory Comm. Notes (2010).  Although considerably less is required under Rule 26(a)(2)(C), the disclosure must contain sufficient information to allow opposing counsel to make an informed decision on which, if any, of the treating providers should be deposed, determine whether to retain experts, and conduct a meaningful deposition or cross examination of the witness at trial.  *See, e.g.*, *Pineda v. City & Cnty. of S.F.*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) (finding that without information about the opinions on which non-retained experts are expected to testify and the main facts on which these opinions are based, opposing counsel's ability to meaningfully depose or cross examine these witnesses was undermined, and counsel could not make an informed decision on which, if any, of numerous treating physicians should be deposed).

**B. Alfaro's Expert Disclosure Does Not Satisfy Rule 26(a)(2)(B)**

The court also finds that Alfaro's disclosure of Dr. Fazzini as her retained expert fails to comply with her Rule 26(a)(2)(B) obligations.  Even before *Goodman* was decided, courts considered treating physicians retained to conduct a records review to be specially retained experts for whom an expert report is required under Rule 26(a)(2)(B).  *See, e.g.*, *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995).  *Goodman* held that Rule 26(a)(2)(B) reports

23

were required of treating physicians who offer expert opinions based on information reviewed or acquired outside the treating relationship. 644 F 3d at 826. Rule 26(a)(2)(B) reports must be "detailed and complete." *Elgas*, 179 F.R.D. at 300. Dr. Fazzini's two-page report falls short of this requirement.

Although the expert witness designation for Dr. Fazzini describes his report as a medical records review, clearly it is not. The report consists solely of information reported to Dr. Fazzini by Alfaro and the results of his neurological examination of her on that particular day. No medical records of any other provider are reviewed. Dr. Fazzini recommended a series of additional tests, told Alfaro to refrain from driving, and recommended that she return for re-evaluation in one month. This is by no stretch of the imagination a medical records review. Rather, it is a narrative report of a single office visit Alfaro had with Dr. Fazzini for a neurological consult on a particular day. It appears counsel for Alfaro intended to have Dr. Fazzini prepare a medical records review report, but did not do so and merely attached a single narrative report to the expert witness designation along with his CV and list of prior testimony, publications, and compensation.

## C. Rule 37(c)(1) Sanctions are Warranted and Plaintiffs' Failure to Satisfy Rule 26(a)(2) Obligations Was Not Harmless

Plaintiffs do not claim that their failure to timely meet the Rule 26(a)(2) disclosure obligations is substantially justified or harmless. Rather, Plaintiffs claim their disclosures are adequate in all respects, and that preclusion or other sanctions are not warranted or authorized by Rule 26. The court disagrees. A party that fails to timely comply with its Rule 26(a) and (e) disclosure requirements unfairly interferes with opposing counsel's ability to properly prepare the case for deposition and trial. It also thwarts opposing counsel's ability to determine whether its own experts are required, unnecessarily prolongs litigation, and interferes with the court's management of its docket. The Ninth Circuit has repeatedly held that parties are required to timely comply with the court's case management order, which is entered "to establish deadlines to foster the efficient treatment and resolution of cases." *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005). The Ninth Circuit has also emphasized that a case

management order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations and citations omitted).

In this district, the Local Rules of Practice establish 180 days as a presumptively reasonable amount of time to complete discovery. *See* LR 26-1(e). The 180 days is measured from the date of the first defendant's answer or first appearance. The Local Rule requires parties to designate expert witnesses 60 days before the discovery cutoff, and rebuttal witnesses 30 days thereafter. This gives parties 60 days to complete rebuttal expert disclosures, any follow up discovery suggested by the expert designations, and any expert depositions before the close of discovery. Dispositive motions are due 30 days after the close of discovery so that the parties have a fully developed record on which to base dispositive motions. If dispositive motions are not filed, the joint pretrial order is due 30 days after the dispositive motion deadline, which results in a trial setting from the district judge. If dispositive motions are timely filed the deadline for filing the joint pretrial order is suspended until 30 days after decision of dispositive motions. These discovery plan and scheduling order deadlines are designed to bring cases to trial in a timely and efficient manner after the close of discovery. When parties do not timely comply with their expert disclosure obligations, the court's discovery plan and scheduling order is disrupted, and resolution of the case on the merits delayed.

In this case, the parties applied for and received special scheduling review, and 55 days more than deemed presumptively reasonable under LR 26-1(e) in which to complete discovery. Before giving the parties the special scheduling review they requested, the court set the matter for hearing and heard from both sides concerning their justification for the additional time. The court gave the parties the time they requested, but expressly told them that they were unlikely to get any further extensions absent a strong showing of good cause and due diligence. *See* Mins. of Proceedings (ECF No. 17).

On April 29, 2016, less than 21 days before the expert disclosure deadline, the parties submitted a proposed stipulation extending the discovery plan and scheduling order deadlines an additional 90 days. The court set the matter for hearing. Counsel for Plaintiffs did not appear at

the hearing to provide additional justification for the additional 90 days requested.  To the extent

the parties were seeking an extension of the deadlines for disclosing experts in their case-in-

chief, the stipulation was not timely filed.  LR 26-4 requires any stipulation to extend any

deadline set by the court's discovery plan and scheduling order to be filed at least 21 days before

the expiration of the deadline.  The stipulation did not represent that Plaintiffs needed additional

time to complete expert disclosures.  Rather Defendants were requesting additional time because

Torrez disclosed additional medical records and testified at his deposition that surgery had been

recommended and Defendants wanted to retain an exert to conduct an independent medical

exam. The court gave the parties a 30-day extension of the deadline to conduct fact discovery

because of the delay experienced in receiving subpoenaed information from LVMPD related to

the accident and Torrez's arrest and prosecution for DUI, but did not extend the expert disclosure

deadlines.

In short, Plaintiffs do not claim their failure to disclose was substantially justified or

harmless, and disruption of the court's case management order is not harmless.  Plaintiffs' failure

to make the required expert disclosures prejudiced Defendants, who were unable to make

informed decisions about which, if any, of the 11 providers and 11 "persons most

knowledgeable" from each provider should be deposed, determine whether defense experts were

required, or conduct meaningful cross-examination of the experts at deposition or trial.  Without

the required disclosures, Defendants were relegated to taking depositions of all 11 providers

without meaningful information to prepare for cross-examination at deposition or trial.  Rule

37(c)(1) sanctions are therefore warranted.  The more difficult question is whether preclusion or

some other sanction or combination of sanctions should be imposed.

It is unknown whether preclusion sanctions would effectively result in dismissal of

Plaintiffs' claims because neither side provided the court with any information concerning the

Plaintiffs' injuries.  Plaintiffs have asserted state negligence claims against Defendants.  To

prevail on a negligence claim in Nevada, a plaintiff must prove: the existence of a duty of care,

breach of that duty, the breach was the legal cause of the plaintiff's injuries, and plaintiff

suffered damages. *Hadler v. PacifiCare of Nevada*, 340 P.3d 1264, 1267 (Nev. 2014).  In most

1    cases, medical expert testimony is required to establish legal causation in a negligence claim.  In

2    some cases, expert causation testimony is not required where "the connection is a kind that

3    would be obvious to laymen, such as a broken leg from being struck by an automobile."  *Brooks*,

4    620 F.3d at 899 (citing *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987)).

5            As the court has no information about either Plaintiffs' claimed injuries, the court cannot

6    whether preclusion sanctions would effectively result in dispositive sanctions.  To the extent that

7    either Plaintiff requires medical expert opinion testimony on causation, a preclusion sanction

8    would dispose of their negligence claims.  As such, the Ninth Circuit requires the court to

9    consider whether Plaintiffs' failure to comply with their Rule 26(a) disclosure obligations was

10   the result of willfulness, fault, or bad faith.  The court concludes it was.  As indicated, Plaintiffs

11   do not claim their failure to comply was substantially justified or harmless.  Rather, Plaintiffs

12   argue they met all of their disclosure obligations.  The violation was willful in the sense it is

13   clear that Plaintiffs intentionally made disclosures designed to give as little information as

14   possible despite the requirements of Rule 26(a)(2)(C).  In opposing these motions, Plaintiffs did

15   not ask for an opportunity to cure these defects, or claim the defects were curable.  Plaintiffs

16   gave the court no information at all about their injuries, how many treating providers were

17   expected to offer opinions, or what opinion any of their treating physicians would offer.  No

18   information was provided concerning whether those opinions were based on treatment, or

19   rendered at the request of counsel for purposes of litigation.  Under these circumstances, the

20   court concludes Plaintiffs' failure to comply with their Rule 26(a)(2) disclosure obligations was,

21   at a minimum, a result of refusal to provide the information required under Rule 26(a)(2)(C) and

22   erroneous reading of  Rule 26(a).

23           When preclusion results in dismissal of a party's claim, the Ninth Circuit also requires

24   the court to consider whether lesser sanctions are available.  Neither side has suggested any

25   alternative sanction.  In *Pineda*, the court imposed Rule 37(c)(1) sanctions thoughtfully crafted

26   to avoid the harsh sanction of precluding all of the plaintiffs' non-retained treating physicians

27   from testifying.  280 F.R.D. at 523.  There, the court granted the motion to preclude with respect

28   to 10 of the plaintiffs' non-retained treating providers but allowed the plaintiffs to designate 3 of

13 non-retained treating providers intended to provide expert opinions, and amend their Rule 26(a)(2)(C) disclosure to provide the information required if the plaintiffs elected to do so. Mindful of the additional expense the defendant would incur, the court also required the plaintiffs to immediately advise defendant whether they intended to provide amended disclosures as required. If so, the court made the plaintiffs responsible for additional costs defendant incurred by late disclosure as a sanction. The court declined to extend the expert disclosure deadline because the time had not yet run, finding it premature. *Id*. at 523–24.

Here, however, the deadline for designating experts ran May 11, 2016, the deadline for completing discovery ran August 10, 2016, and dispositive motions are due September 9, 2016. Imposing the types of sanctions the *Pineda* court imposed would reduce or eliminate much of the prejudice to Defendants by Plaintiffs' late disclosures. The court could simply shift the costs of Plaintiffs' noncompliance to Plaintiffs. However, substantial delay would occur in a case where the parties have already received special scheduling review and more time than deemed presumptively reasonable to complete discovery. It would require reopening discovery and establishing new deadlines, and disrupt the court's management of its docket. It would also impact the integrity of the court's orders. Parties are simply not at liberty to ignore the court's discovery plan and scheduling order deadlines without consequence. Had Plaintiffs made some effort to make the required disclosures, the court might be influenced to impose lesser sanctions. However, as indicated, the disclosures Plaintiffs made in this case were so generic, unhelpful and boilerplate, that they could have been made in virtually any case. Moreover, even in the face of motions to strike and exclude, Plaintiffs steadfastly maintained that they met their disclosure obligations, nothing more was required, and no sanctions were authorized. Lesser sanctions are unlikely to deter Plaintiffs' counsel from advocating the same position prospectively. For these reasons, the court finds that, although preclusion sanctions are potentially dispositive, they are warranted.

/ / /

/ / /

/ / /

Accordingly,

**IT IS ORDERED:**

1.  Defendants' Motion to Strike Torrez's Future Damages Calculation (ECF No. 23) and Motion to Preclude Plaintiffs from Offering Expert Testimony (ECF Nos. 24) are **GRANTED**.

2.  Counter-Defendant's Motion to Preclude Plaintiffs from Offering Expert Testimony (ECF Nos. 26) and Motion to Strike Report of Dr. Enrico Fazzini (ECF No. 27) are **GRANTED**.

Dated this 24th day of August, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE